IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

JAIME P. POWERS,

       Plaintiff,

vs.                                                                               CIV NO.   1:15-00542-CG

CAROLYN W. COLVIN, Acting
Commissioner of the Social Security
Administration,

       Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on Jaime P. Powers' *Motion to Reverse and Remand for Rehearing, with Supporting Memorandum* ("Motion"), (Doc. 18), filed on November 23, 2015; Defendant's *Brief in Response to Plaintiff's Motion to Reverse and Remand for Rehearing With Supporting Memorandum* ("Response"), (Doc. 22), filed on February 22, 2016; and *Plaintiff's Reply* ("Reply"), (Doc. 23), filed on March 7, 2016.

On March 25, 2011, Mr. Powers filed applications for disability insurance and supplemental security income benefits, alleging disability beginning January 1, 2009. (Administrative Record ("AR") 216–24, 225–30). His application was denied on September 21, 2011, (AR 100–03, 104–07), and also upon reconsideration on May 11, 2012, (AR 111–13, 114–17). Mr. Powers filed his request for a hearing on July 9, 2012, (AR 118–20); and a hearing was held on April 16, 2014 before Administrative Law Judge ("ALJ") Ann Farris. (AR 32–62). Mr. Powers and Nicole B. King, an impartial vocational expert, testified at the hearing. (*Id.*). Mr. Powers was represented at the hearing by attorney Feliz Martone. (*Id.*).

The ALJ issued her opinion on May 14, 2014, finding that Mr. Powers was not disabled. (AR 18–26). Mr. Powers filed an application for review by the Appeals Council, which was summarily denied, (AR 5–10), making the decision of the ALJ the final decision of the Commissioner of the Social Security Administration (the "Commissioner") for purposes of this appeal.

Mr. Powers argues that the ALJ committed reversible, legal error by: (i) failing to perform a function-by-function analysis of his restrictions and limitations; (ii) failing to evaluate his ability to interact with supervisors; and (iii) affording little weight to the consultative examiner's ("CE") medical opinion. (Doc. 18).

The Court has reviewed the Motion, the Response, the Reply, and relevant law. Additionally, the Court has meticulously reviewed and considered the entire administrative record. Because the Administrative Law Judge did not commit reversible legal error as alleged by Mr. Powers, the Court orders that the Motion be **DENIED** and the case be **DISMISSED WITH PREJUDICE**.

**I. Standard of Review**

The standard of review in a Social Security appeal is whether the Commissioner's final decision is supported by substantial evidence and whether the correct legal standards were applied. *Maes v. Astrue*, 522 F.3d 1093, 1096 (10th Cir. 2008) (citing *Hamilton v. Sec'y of Health & Human Servs.*, 961 F.2d 1495, 1497–98 (10th Cir. 1992)). If substantial evidence supports the ALJ's findings and the correct legal standards were applied, the Commissioner's decision stands and the plaintiff is not entitled to relief. *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004); *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004); *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003). A

court should meticulously review the entire record but should neither re-weigh the evidence nor substitute its judgment for that of the Commissioner. *Langley*, 373 F.3d at 1118; *Hamlin*, 365 F.3d at 1214. A court's review is limited to the Commissioner's final decision, 42 U.S.C. § 405(g), which generally is the ALJ's decision, not the Appeals Council's denial of review. 20 C.F.R. § 404.981; *O'Dell v. Shalala*, 44 F.3d 855, 858 (10th Cir. 1994).

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Langley*, 373 F.3d at 1118; *Hamlin*, 365 F.3d at 1214; *Doyal*, 331 F.3d at 760. An ALJ's decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Langley*, 373 F.3d at 1118; *Hamlin*, 365 F.3d at 1214. While a court may not re-weigh the evidence or try the issues *de novo*, its examination of the record as a whole must include "anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005). "The possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ]'s findings from being supported by substantial evidence." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citing *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)).

## II. Applicable Law and Sequential Evaluation Process

For purposes of disability insurance benefits ("DIB") and supplemental security income ("SSI"), a person establishes a disability when he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be

expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A), 42 U.S.C. § 1382c(a)(3)(A); 20 C.F.R. § 416.905(a). In light of this definition for disability, a five-step sequential evaluation process ("SEP") has been established for evaluating a disability claim. 20 C.F.R. §§ 404.1520, 416.920; *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). At the first four steps of the SEP, the claimant has the burden to show that: (1) he is not engaged in "substantial gainful activity"; that (2) he has a "severe medically determinable . . . impairment . . . or a combination of impairments" that has lasted or is expected to last for at least one year; and (3) his impairment(s) either meet or equal one of the "Listings"[1] of presumptively disabling impairments; or (4) he is unable to perform his "past relevant work."
20 C.F.R. §§ 404.1520(a)(4)(i–iv), 416.920(a)(4)(i–iv); *Grogan*, 399 F.3d at 1261. If the ALJ determines the claimant cannot engage in past relevant work, he will proceed to step five of the evaluation process. At step five the burden of proof shifts to the Commissioner to show the claimant is able to perform other work in the national economy, considering his residual functional capacity ("RFC"), age, education, and work experience. *Grogan*, 399 F.3d at 1257.

### III. Background

Mr. Powers initially applied for disability benefits and supplemental security income alleging that he suffers from bipolar disorder and post-traumatic stress disorder ("PTSD"). (AR 100, 104).

At step one, the ALJ determined that Mr. Powers met the insured status requirements through June 30, 2013, and found that he had not engaged in substantial

---

[1] 20 C.F.R. pt. 404, subpt. P, app. 1.

gainful activity since January 1, 2009, the date of alleged onset. (AR 20). At step two, the ALJ concluded that Mr. Powers was severely impaired by bipolar disorder, anxiety, PTSD, and a history of polysubstance abuse in early remission. (AR 20–21).

At step three, the ALJ considered whether Mr. Powers' impairments satisfied or met any of the listed impairments. She determined that none of Mr. Powers' impairments, solely or in combination, met or medically equaled any of the listed impairments in 20 CFR §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926. (AR 21–22).

The ALJ proceeded to step four. First, she analyzed Mr. Powers' subjective complaints of his symptoms and the objective medical evidence in the record. (AR 22–24). The ALJ found that Mr. Powers' statements as to the intensity, persistence, and limiting effects of his symptoms were not entirely credible. (AR 24). The ALJ discussed medical records from University of New Mexico Health Sciences Center, and treatment notes from the Bernalillo County Metropolitan Detention Center and Albuquerque Healthcare for the Homeless. (AR 23). The ALJ also considered the report and opinion of consultative examiner ("CE") Amy DeBernardi, Pys.D. (AR 24).

The ALJ ultimately found that Mr. Powers has the RFC to perform a full range of work at all exertional levels, but that he was limited to jobs involving: (i) simple work related decisions with few workplace changes; (ii) no public interaction; and (iii) only occasional superficial interaction with coworkers. (AR 22).

Next, the ALJ considered whether Mr. Powers was capable of doing any of his past relevant work. (AR 24). The ALJ explained that Mr. Powers' past relevant work includes the job of tile sprayer, and found that, in light of the RFC finding, Mr. Powers

was capable of performing his past work. (*Id.*).

Alternatively, at step five, the ALJ stated that, considering Mr. Powers' age, education, work experience, and RFC, Mr. Powers is also capable of performing work as a janitor and hand packager. (AR 25). Accordingly, she found that Mr. Powers was not disabled under the Social Security Act ("SSA") from the alleged disability onset date, January 1, 2009, through the date of her decision. (AR 26).

### IV. Analysis

Mr. Powers alleges that the ALJ committed several reversible errors at step four of the sequential analysis. First, Mr. Powers argues that the ALJ failed to perform a function-by-function analysis of his restrictions and limitations, as required by Social Security Ruling ("SSR") 96-8p, 1996 WL 374184 (July 2, 1996). (Doc. 18 at 7–8). Second, Mr. Powers contends that the ALJ also failed to evaluate Mr. Powers' ability to interact with supervisors, and only discussed his ability to interact with the public and coworkers. (Doc. 18 at 8–9). Finally, Mr. Powers maintains that the ALJ failed to properly weigh the opinion of CE Dr. DeBernardi. (Doc. 18 at 9–12).

The Commissioner first responds that the ALJ rendered her RFC finding in accordance with SSR 96-8p by discussing the evidence in the record and assessing Mr. Powers' RFC in terms of work-related functions. (Doc. 22 at 9–10). In addition, the Commissioner maintains that the ALJ clearly considered Mr. Powers' mental limitations in the context of the entire record and made her RFC finding accordingly. (Doc. 22 at 10–11). Finally, the Commissioner argues that the ALJ reasonably evaluated and weighed Dr. DeBernardi's opinion using the appropriate regulatory factors. (Doc. 22 at 12–13).

A.   <u>Challenge to the RFC Finding</u>

1.   *The ALJ's Function-By-Function Analysis of Mr. Powers' Limitations*

First, Mr. Powers argues that the ALJ failed to identify his functional limitations and assess his work-related abilities on a function by function basis, and failed to provide a narrative discussion linking evidence to each of the ALJ's conclusions. (Doc. 18 at 7). Mr. Powers asserts that this is in violation of SSR 96-8p, and constitutes reversible error. (Doc. 18 at 7–8). The Commissioner responds that the ALJ expressly articulated Mr. Powers' impairments in terms of work-related functions, and sufficiently discussed the evidence in the record to link it to her RFC finding. (Doc. 22 at 9). The Commissioner further maintains that the ALJ's findings are otherwise supported by substantial evidence, and that the Court can follow her reasoning. (Doc. 22 at 10).

Social Security Ruling 96-8p provides that "[t]he RFC assessment is a function-by-function assessment based upon all of the relevant evidence of an individual's ability to do work-related activities." SSR 96-8p, 1996 WL 374184 at *3. "The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." SSR 96-8p, 1996 WL 374184, at *7.

Courts in the Tenth Circuit have held that "the narrative discussion requirement of SSR 96-8p 'does not require citation to a medical opinion, or even to medical evidence in the administrative record for each RFC limitation assessed.'" *Oliva v. Colvin*, No. 13-CV-02495-PAB, 2015 WL 5719645, at *10 (D. Colo. Sept. 30, 2015) (unpublished) (citing *Crawford v. Colvin*, 2013 WL 672955, at *4 (D. Kan. Feb. 25, 2013) (unpublished)).

"However, the question of whether an ALJ has engaged in an appropriate narrative discussion is, as a general matter, evaluated on a case by case basis." *Id.* (internal citations omitted). In any case, the concern underlying SSR 96-8p and the requirement that the RFC be a function-by-function assessment supported by a narrative discussion, "is that, without a function-by-function analysis, an ALJ 'may . . . overlook limitations or restrictions that would narrow the ranges and types of work an individual may be able to do.'" *Hendron v. Colvin*, 767 F.3d 951, 956 (10th Cir. 2014) (citing SSR 96-8p, 1996 WL 374184 at *4).

      As a result, Courts have found an ALJ to have fulfilled her obligations under SSR 96-8p when it is clear from the written decision that she has considered evidence of a claimant's limitations, and adequately explained how the evidence in the record supports her RFC finding in order to allow for the court's meaningful review of the decision. *See Hendron*, 767 F.3d at 954; *Compare Lopez v. Colvin*, No. 12-cv-01293-WYD, 2013 WL 5201009, at *3 (D. Colo. Sept. 16, 2013) (unpublished) (finding that the ALJ provided an adequate narrative discussion under SSR 96-8p where the ALJ cited specific medical facts and opinions, and nonmedical evidence in assessing the RFC), *and Oliva*, No. 13-CV-02495-PAB, 2015 WL 5719645, at *11 (holding that the ALJ's narrative discussion of the evidence was sufficient where the ALJ identified medical evidence and the subjective complaints relied upon in formulating the RFC), *with Spicer v. Barnhart*, No. 02-5072, 64 Fed. Appx. 173, 177–78 (10th Cir. May 5, 2003) (unpublished) (remanding case where the ALJ's narrative discussion of the evidence supporting the RFC finding provided no indication that the ALJ considered one of the plaintiff's diagnosed and medically documented impairments either alone or in combination with her other

impairments).

Here, as stated above, the ALJ found Mr. Powers to have the RFC to perform a full range of work at all exertional levels, but that he is limited to jobs involving simple work-related decision with few workplace changes; no public interaction; and only occasional superficial interaction with coworkers. (AR 22). The ALJ then described Mr. Powers self-reports of his functional abilities and limitations, the activities he engages in, as well as the medical evidence bolstering and detracting from his claim of disabling functional limitations.

First, the ALJ reviewed Mr. Powers' alleged symptoms as described by Mr. Powers in his reports and testimony, and by Mr. Powers' mother in her third-party function report. Mr. Powers alleged disability due to anxiety, depression, bipolar disorder, and PTSD, and that, as a result, he has difficulty concentrating, comprehending, remembering, and following instructions. (AR 23). Mr. Powers reports that he is uncomfortable and anxious in public and among strangers, including coworkers, and that these symptoms are set off by tension and stress, especially in work environments. (*Id.*).

The ALJ found Mr. Powers' complaints to not be entirely credible.[2] (AR 24). The ALJ based this adverse credibility finding in part on the lack of consistent treatment and counseling in the record. (AR 23). The ALJ explained that "the psychological limitations [Mr. Powers] professes are not adequately represented or verifiable in his treatment record and the medication and marijuana management he has pursued for his symptoms do not clinically verify or substantiate the disabling limitations he alleges." (*Id.*).

The ALJ also acknowledged that, while Mr. Powers often exhibited an anxious and depressed mood, he was also "consistently found to be alert and cooperative with

---

[2] Mr. Powers does not challenge the ALJ's credibility finding on appeal.

coherent and logical thoughts, an intact memory, good insight and judgment, and free of psychomotor abnormalities." (*Id.*). Given this evidence, and the "apparent baseline of functioning," the ALJ explicitly found that Mr. Powers was "capable of performing a range of simple work tasks in work settings with few workplace changes, no public interaction, and only occasional superficial interaction with coworkers." (*Id.*).

In addition, the ALJ noted that, even though Mr. Powers reports intense anxiousness, irritability, distractibility, social isolation, and limitations with persistence, he does not necessarily adhere to medical advice and directives from his treatment providers. (*Id.*). The ALJ cited to instances in the record where Mr. Powers went without prescribed medications or used street drugs, and explained that Mr. Powers' symptoms seemed to intensify during those times. (*Id.*). As a result, the ALJ linked Mr. Powers' "medication non-compliance, as well as his abandonment of medical directives, to exacerbated symptomatology, which, notwithstanding, would not exist to the degree manifested." (*Id.*).

Finally, the ALJ weighed the medical opinions of state agency physicians and the CE, giving them "little weight."[3] (AR 24). In addition, the ALJ discussed Mr. Powers' global assessment of functioning ("GAF") scores, and explained why she would afford those scores no significant weight. (*Id.*).

Mr. Powers does not identify any additional evidence which the ALJ failed to consider, and only argues generally that the ALJ did not adequately bridge the gap between the evidence in the record and her ultimate RFC finding. This Court disagrees. As evidenced by the discussion above, the ALJ identified the medical evidence she

---

[3] Mr. Powers also argues that the ALJ erred in assigning the opinion of consultative examiner Dr. DeBernardi little weight. This argument and the ALJ's analysis of the opinion will be discussed at pp. 13–17, *infra*.

10

relied on in making her RFC determination, explained which evidence she used to make her adverse credibility finding, and weighed the medical opinions in the record. This is a sufficient showing of how the evidence supported her RFC finding pursuant to SSR 96-8p. *See Lopez*, No. 12-CV-01293-WYD, 2013 WL 5201009, at *3 (finding the ALJ's decision adequate under SSR 96-8p where the ALJ cited to specific medical facts, medical opinions, and nonmedical evidence in determining the RFC, despite the fact that ALJ did not state specifically what evidence he relied upon in connection with specific limitations); *see also Oliva*, No. 13-CV-02495-PAB, 2015 WL 5719645, at *11.

Indeed, where, as here, the Court can follow the ALJ's reasoning in conducting its review, and can determine that correct legal standards have been applied; merely technical omissions in the ALJ's reasoning do not dictate reversal. *Keyes–Zachary v. Astrue,* 695 F.3d 1156, 1166 (10th Cir. 2012). The Court "must[ ] exercise common sense," and "cannot insist on technical perfection." *Id.* Thus, the Court finds that the ALJ sufficiently explained her RFC determination in accordance with SSR 96-8p and supported her decision with substantial evidence.

    2.  *The ALJ's Evaluation of Mr. Powers' Ability to Interact with Supervisors*

Second, Mr. Powers argues that the ALJ failed to explicitly discuss his limitations in his ability to interact with supervisors. (Doc. 18 at 2–3). Mr. Powers maintains that, given the evidence in the record, the ALJ's failure to discuss these limitations, or include them in the RFC finding was error. (Doc. 18 at 2). The Commissioner responds that it is clear from the ALJ's written decision that she considered all of Mr. Powers' mental limitations and that the ultimate RFC assessment was meant to address the totality of Mr. Powers' mental limitations, which did not specifically include his ability to interact with

supervisors. (Doc. 22 at 10–11).

In support of his argument, Mr. Powers cites to 20 C.F.R. §§ 404.1545(c), 416.945(c), and SSR 96-8p. The Regulations state simply that an ALJ assesses the nature of a claimant's mental limitations and restrictions and then determines the RFC, which may include several limitations, including responding appropriately to supervision. *See* 20 C.F.R. §§ 404.1545(c), 416.945(c). SSR 96-8p, as described above, requires that a claimant's nonexertional capacity be expressed in terms of work-related functions, including the ability to respond appropriately to supervision. SSR 96-8p, 1996 WL 374184, at *6. Mr. Powers provides no authority for the proposition that an ALJ must specifically address and explain whether a claimant is limited in his ability to interact with supervisors.

Mr. Powers also points to his self-reported symptoms of paranoia and anxiety around groups of people and strangers, and his difficulty in completing tasks and concentrating. (Doc. 18 at 8–9 (citing AR 390, 391)). Mr. Powers asserts that these symptoms are corroborated by Mr. Powers' mother in her *Third Party Function Report*. (Doc. 18 at 9 (citing AR 408–15)). Because of this evidence, Mr. Powers contends that the ALJ was required to discuss his mental work-related abilities and social functioning, including his ability to interact with supervisors. (*Id.*).

In fact, the ALJ did explicitly consider this evidence. Indeed, the ALJ describes these symptoms in the written decision, and cites to both Mr. Powers' and his mother's adult function reports in the discussion. (AR 23 (citing Exhibit 9E, *Third Party Function Report* by Katheleen Dillon, and Exhibits 5E and 10E, *Adult Function Reports* by Jaime Powers)). Ultimately, the ALJ found Mr. Powers' subjective complaints to not be entirely

credible. (AR 24). Moreover, Mr. Powers does not point to any evidence which suggests limitations in his ability to interact with supervisors specifically. The Court's own review of the record reflects Mr. Powers' limitations in interacting with strangers and the public generally, and includes only two references to being "nervous" and "uncomfortable sometimes" around authority figures. (AR 414, 425).

There is no indication that the ALJ did not consider Mr. Powers' ability to interact with supervisors, and the decision conveys that the RFC finding was meant to reflect Mr. Powers' overall mental capacity in work-related functions. Mr. Powers points to no other evidence to suggest otherwise. In light of the discussion of the ALJ's consideration of the evidence and RFC assessment above, *see* discussion at pp. 9–11 *supra*, the Court is satisfied that the ALJ sufficiently explained her RFC determination in accordance with the Regulations and SSR 96-8p, and supported her decision with substantial evidence.

### B.     Challenge to the ALJ's Analysis of Medical Opinions

Finally, Mr. Powers challenges the ALJ's consideration of Dr. DeBernardi's medical opinions. He argues that the ALJ erred by giving little weight to the opinion, as the reasons for doing so are not supported by substantial evidence. (Doc. 18 at 9–12). The Commissioner responds that the ALJ evaluated Dr. DeBernardi's opinion using the appropriate regulatory factors, and that her decision to afford the opinion little weight is supported by substantial evidence. (Doc. 22 at 12–13).

#### 1.     The ALJ Must Evaluate Every Medical Opinion in the Record

An ALJ must consider all evidence in the record, although she is not required to discuss every piece of evidence. *Clifton v. Chater*, 79 F.3d 1007, 1009–10 (10th Cir. 1996). However, the ALJ "must discuss the uncontroverted evidence he chooses not to

13

rely upon, as well as significantly probative evidence he rejects." *Id.* (citing *Vincent ex rel. Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984)); *see also Briggs*, 248 F.3d at 1239. In the absence of findings supported by specific weighing of the evidence in the record, the ALJ leaves the Court unable to assess whether relevant evidence adequately supports her conclusion. *Clifton*, 79 F.3d at 1009.

Specifically, the Social Security Regulations require the ALJ to evaluate every medical opinion in the record. *See* 20 C.F.R. §§ 404.1527(b), 416.927(b). The Regulations define medical opinions as statements that reflect "judgments about the nature and severity of your impairment(s)." 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2). Mere collections of treatment notes, including subjective complaints and treatment prescribed, do not constitute medical opinions. *Eacret v. Barnhart*, No. 04-5062, 120 Fed. Appx. 264, 267 (10th Cir. Jan. 10, 2005) (unpublished); *Moua v. Colvin*, No. 12-5161, 541 Fed. Appx 794, 797 (10th Cir. July 30, 2013) (unpublished).

Every medical source opinion, including those of non-examining State Agency physicians, should be weighed by the ALJ in consideration of the following, applicable "deference factors":

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Watkins v. Barnhart*, 350 F.3d 1297, 1300–01 (10th Cir. 2003); *see also* 20 C.F.R. §§ 404.1527(c)–(d) and 416.927 (c)–(d). Based on these factors, "an examining physician's opinion is normally entitled to more weight than a non-examining physician's opinion."

14

*Kerwin v. Astrue*, No. 06-6343, 244 Fed. Appx. 880, 884 (10th Cir. Aug. 8, 2007) (unpublished) (citing *Robinson v. Barnhart*, 366 F.3d 1078, 1084 (10th Cir. 2004) ("The opinion of an examining physician is generally entitled to less weight than that of a treating physician, and the opinion of an agency physician who has never seen the claimant is entitled to the least weight of all.") (internal citations omitted)). Ultimately, the ALJ must give good reasons—reasons that are "sufficiently specific to [be] clear to any subsequent reviewers"—for the weight that she ultimately assigns to the opinions. *Langley*, 373 F.3d at 1119 (citations omitted). Failure to do so constitutes legal error. *See Kerwin*, 244 Fed. Appx. at 884.

### 2. The ALJ's Consideration of Dr. DeBernardi's Mental Disability Evaluation

With regard to opinion evidence in the record, the ALJ stated that she "considered opinion evidence in accordance with the requirements of 20 CFR §§ 404.1527 and 416.927, and SSRs 96-2p, 96-5p, 96-6p, and 06-3p." (AR 22). In her decision, the ALJ weighed the opinions of state agency reviewers and consultative examiner Dr. DeBernardi. (AR 24). Mr. Powers argues that the ALJ improperly weighed and considered the opinion of Dr. DeBernardi.

Dr. DeBernardi performed a psychiatric consultative examination of Mr. Powers on March 8, 2012. (AR 658–61). In her Mental Disability Evaluation, Dr. DeBernardi diagnosed Mr. Powers with bipolar disorder and PTSD. (AR 661). She opined that Mr. Powers "is most likely unable to work at this time," due to his "ongoing mental health issues [which] would impact his ability to be a dependable employee, sustain a typical workday, or adapt to changes in the work environment." (*Id.*). Dr. DeBernardi gave Mr.

Powers a GAF score of 50.[4]

The ALJ stated that she placed little weight on Dr. DeBernardi's opinions. (AR 24). In support, the ALJ reasoned that she found substantial evidence to contradict the opinion, particularly considering Mr. Powers' record of non-compliance with medical directives, and that Mr. Powers was not completely forthcoming to Dr. DeBernardi regarding his past or recent substance use issues. (*Id.*). As a result, the ALJ found the opinion to be "fatally compromised." (*Id.*).

Mr. Powers does not contend that these issues are irrelevant or improper to consider in connection with weighing a medical opinion. Rather, he maintains that these findings are not supported by substantial evidence. Specifically, Mr. Powers argues that he was candid with medical providers regarding his history of substance use and that, in any event, Dr. DeBernardi reviewed his other medical records which discussed his substance use. (Doc. 18 at 9–10). In addition, Mr. Powers cites to evidence in the records which supports Dr. DeBernardi's opinion and a finding of disability. (Doc. 18 at 11–12).

In her decision, the ALJ explained that she found Mr. Powers' symptoms to be exacerbated by his failure to follow medical directives and his use of drugs, as detailed in the Court's discussion above. In Dr. DeBernardi's evaluation, she reports that she reviewed a psychiatric evaluation dated August 17, 2011 diagnosing Mr. Powers with bipolar disorder and PTSD, and an assessment from Albuquerque Healthcare for the

---

[4] "The GAF is a subjective determination based on a scale of 100 to 1 of the clinician's judgment of the individual's overall level of functioning." *Lanley*, 373 F.3d at 1122 n.3 (citing American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders (Text Revision 4th ed. 2000) [DSM–IV–TR] at 32). A GAF between 41 and 50 indicates "[s]erious symptoms ... [or] serious impairment in social, occupational, or school functioning." *Pisciotta v. Astrue*, 500 F.3d 1074, 1076 n.1 (10th Cir. 2007) (citing *Langley*, 373 F.3d at 1122 n.3). GAF scores between 41 and 50 suggest an inability to keep a job. *Id*.

Homeless, diagnosing Mr. Powers with bipolar affective disorder, most recent episode, PTSD, and opiate dependence. (AR 659). Dr. DeBernardi also states that Mr. Powers denied the use of alcohol or drugs, and indicated that he used to drink alcohol, but has not done so since 2009. (*Id.*). While Dr. DeBernardi may have been made aware of Mr. Powers' opiate dependence from the Healthcare for the Homeless assessment and his prescription for Suboxone, her evaluation does not reflect that she reviewed all of the Healthcare for the Homeless records, or was otherwise made aware of Mr. Powers' recent use of substances and his non-compliance with medication throughout the second half of 2011. (AR 567, 639). As a result, the Court disagrees with Mr. Powers, and finds that it is not clear whether Dr. DeBernardi was aware of the extent of Mr. Powers' drug use, and his most recent overdose.

While Mr. Powers emphasizes that he is asking the Court to ensure the ALJ followed the proper legal standards, (Doc. 23 at 2), he is, in fact, asking the Court to reweigh the evidence and afford Dr. DeBernardi's opinion greater weight, in order to formulate a more restrictive RFC finding. The Court may only consider whether the ALJ followed the specific rules of law in weighing a medical source opinion, and may not reweigh the evidence or substitute its own judgment for the Commissioner's. *Cowan v. Astrue*, 552 F.3d 1182, 1185 (10th Cir. 2008). The Court finds that the ALJ gave sufficiently specific reasons for the weight she assigned to Dr. DeBernardi's opinion in consideration of the deference factors and her finding is supported by substantial evidence.

## V. Conclusion

For all of the foregoing reasons, the Court concludes that the ALJ did not commit

the errors alleged by Mr. Powers. In addition, the Court finds that substantial evidence supports all of the ALJ's determinations challenged by Mr. Powers.

**IT IS THEREFORE ORDERED** that Mr. Powers' *Motion to Reverse and Remand for Rehearing, with Supporting Memorandum*, (Doc. 18), be **DENIED** and that this cause of action is **DISMISSED WITH PREJUDICE**.

_____
THE HONORABLE CARMEN E. GARZA
UNITED STATES MAGISTRATE JUDGE